## Peebles and Wife *versus* The City of Pittsburgh.

1. A voluntary payment of money under a claim of right cannot in general be recovered back. There must be compulsion, actual, present and potential in inducing the payment, by force of process available for instant seizure of person or property, when the party so paying must give notice of the illegality of the demand and of his involuntary payment.

2. The element of coercion being essential, mere protest or notice will not change the character of the payment or confer of itself a right of recovery.

3. In accordance with an Act of Assembly, in reference to the improvement of Penn avenue, Pittsburgh, the cost thereof was assessed equally per foot upon the property abutting on the street. For unpaid installments of the assessments the city attorney was to file a claim on which writs of scire facias and levari facias might issue as on mechanic's liens. A., being one of the property owners on Penn avenue, was assessed in this way and paid the installments of his assessment as they fell due upon receiving notice that if the same were not paid in 30 days they would be collected by process of law at his expense. The payments were made under protest, with notice that if A. were not legally liable to pay the same he would seek to recover them back. The city attorney moreover assured A. that in such case he would be legally entitled to recover the same. Subsequently the Act of Assembly under which the assessments were made was declared by the Supreme Court to be unconstitutional. A. having brought an action against the city to recover the sums so paid: *Held*, that his payments, having been voluntary, could not be recovered back. *Held further*, that his notice and protest at the time of his payments gave him no higher right. *Held further*, that the statements made to the plaintiff by the city attorney were not binding upon the city.

October 12th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas No. 1, of *Allegheny county :* Of October Term 1882, No. 104.

Assumpsit, by George W. Peebles and Mary F., his wife, against the city of Pittsburgh, to recover back $6,316.33 being the amount of taxes paid by the plaintiffs to the defendant and

[Peebles v. City of Pittsburgh.]

alleged to have been unlawfully assessed. By agreement filed, the parties dispensed with trial by jury, and it was further agreed that the court should take as a statement of the facts of the case (except as necessarily modified), a statement of fact passed on by the Supreme Court in Seely v. Pittsburgh (1 Norris 360), in which case the Act of Assembly under which these assessments were made was decided to be unconstitutional as respects the owners of rural property.

The court found the facts to be as follows :

From the facts in evidence it appears that in accordance with the provisions of an Act of Assembly, approved April 2d 1870, and supplements thereto, in reference to the improvement of Penn avenue, commissioners were duly elected and the improvement made, and in accordance therewith the entire cost thereof was assessed equally per front foot upon the property abutting upon said street. A plot was prepared showing the separate lots of ground and the owners thereof, and the amounts assessed each lot or piece of ground, and the same filed in the prothonotary's office of Allegheny county, said assessment was payable at the office of the city treasurer, in ten annual installments with interest at 7 per cent. upon the unpaid portion thereof.

If said installments were not paid within thirty days after the same became due, the city attorney was to file a claim for the same in the District Court, in the same manner as mechanic's liens are filed, and a writ of scire facias and levari facias might issue thereon, as in case of mechanic's liens, and judgment be entered for the full amount of the assessment unpaid, with leave to take out execution for the installment and interest due, and for such subsequent installment as it became due.

The plaintiff in this action was one of the owners of property upon the line of the avenue, and was assessed with a large amount, viz : ———— as his proper share of the cost of the improvement, for which a lien was filed as required by said Act against said property. The property of plaintiff upon which said assessment was made, and against which the lien was filed, is situated in the rural district, and is such as under the rule in Seeley's case is not liable for assessment under the provisions of said Act.

There is no evidence that the plaintiff voted at the election for commissioners, and we therefore take the fact that he did not vote at such election.

It is admitted that George E. Peebles, plaintiff, paid to the city of Pittsburgh, for grading, paving, &c., of Penn avenue, the first installment of his assessment on August 14th, 1874, amounting to $2,682.44, also on September 7th 1875, the first installment on another piece of property, amounting to $831.84,

and on December 8th 1874, $1,683.05, and on September 7th 1875, $589.39. Said sums having been paid to the city attorney, and the further sum of $529.08 was paid to the city treasurer, September 7th 1875.

It appears that before any of the payments was made that the city treasurer, by letter or paper, dated September 1st 1873, notified George E. Peebles, plaintiff, that in accordance with the provisions of said Act, the Penn avenue improvement commissioner had filed in his office an assessment against him for the paving and setting with curb stones of Penn avenue, East End, amounting to $13.582.32, and that the first installment with 7 per cent. interest on amount of assessment, amounting to $3.259.76, was then due and payable at the treasurer's office within 30 days, and if not paid within that time it would be filed as a lien against said property with interest, costs and fees. And the city attorney, on the 20th of July 1874, also gave plaintiff notice, partly in print and partly in writing, that the city of Pittsburgh had placed in his hands a claim for Penn avenue grading, &c., of $120 and stating therein, "unless immediate payment is made it will become my duty to collect the same by process of law within 30 days, you will avoid trouble and expense by attending to the matter at once." And it further appears that all the several installments herein sued for were paid after notices of a similar character from the treasurer and solicitor of the city. It is alleged by plaintiffs that when they paid the several installments as aforesaid, each was paid with a distinct declaration that the same was paid under protest, and with notice that if plaintiffs were not legally liable to pay the same they would seek to recover it back. The evidence leads me to find such to be the fact, and also that the solicitor for the city assented to the proposition that if there was no legal liability to pay the assessment, the money could be recovered back from the city. It also appears from plaintiffs' affidavit of claim that they believed the assessments were illegal and void at the time the several assessments were paid.

The conclusions of law were as follows :

"The plaintiffs' land being rural or country property, it is clear, under the decision of Seeley *v.* Pittsburgh, that the assessments against plaintiff were illegal and void, and such as they could not have been compelled by action or legal proceedings to pay. But there was no actual or threatened seizure of person or property at the time of the payments, nor could there have been anything more than a sci. fa. issued, to which the plaintiff could have made defence. The fact of payment under such circumstances does not make the payments involuntary to such an extent as will enable the plaintiffs to recover back the money paid. The decision lately made in the Union Insurance Com-

[Peebles v. City of Pittsburgh.]

pany v. Allegheny fully expresses our views upon this question.

"It is now ordered that judgment be entered in favor of defendant and against plaintiff with costs of suit unless exceptions are filed to the foregoing findings of fact or the said conclusions of law within 30 days from notice hereof."

Exceptions were duly filed by the plaintiff to the above conclusions of law and were dismissed by the court.    Whereupon the plaintiff took this writ, assigning for error the conclusions of law arrived at by the court upon the facts found.

*Wm. P. Elliott*, for the plaintiff in error.—It is established in Pennsylvania that taxes assessed without authority, with no right of appeal to the taxing powers, and paid under protest with notice that they would be reclaimed, can be recovered back : Borough of Allentown v. Saeger, 8 Harris 421; Hospital v. Phila. County, 12 Harris 231 ; Taylor v. Board of Health, 7 Casey 73 ; School Directors v. Carlisle Bank, 8 Watts 294; McCrickart v. Pittsburgh, 7 Norris 133.    It has never been intimated that a well grounded apprehension of immediate seizure of person or property is an indispensable element to constitute an involuntary payment :  Henry v. Horstic, 9 Watts 412 ;  Grim v. Weissenberg School District, 7 P. F. S. 434; Caldwell v. Moore, 1 Jones 60.    Payment under protest of an unjust demand is legally equivalent to actual duress and protest : Erskine v. VanArsdale, 15 Wallace 75 ; Boston Glass Co. v. Boston, 4 Met. 189 ; Lond v. Charleston, 99 Mass. 209 ; Arnold v. Cambridge, 106 Mass. 352 ; Judd v. Fox Lake, 28 Wis. 587 ; First National Bank v. Watkins, 21 Mich. 488; Allen v. Burlington, 45 Vt. 214 ; Bellinger v. Gray, 51 N. Y. 613.

*W. C. Moreland*, City Attorney, for defendant in error.— When a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back ; and the fact that the party at the time of making the payment files a written protest does not make the payment involuntary, WAITE, C. J., in Railroad v. Commissioners, 98 U. S. 541.    To the same effect are Forbes v. Appleton, 5 Cushing 115; Patterson v. Cox, 25 Ind. 261; Phillips v. Commissioners, 5 Kansas 412 ; Bucknall v. Story, 46 Cal. 589 ; Lamborn v. Commissioners, 97 U. S. 181.

[Peebles *v.* City of Pittsburgh.]

Mr. Justice GREEN delivered the opinion of the court, October 25th 1882.

The assessment against the plaintiffs could only be collected adversely by means of a proceeding in the courts. It was payable in installments, and if these were not paid within thirty days after they became due, the city attorney was to file a claim for the same in the District Court in the same manner as mechanics' liens are filed, and a writ of scire facias and levari facias might issue thereon as in case of mechanics' liens. Of course in such a proceeding the person assessed would be accorded every possible opportunity to appear and interpose all objections to the recovery of the money. In the present case notice of filing the assessment with the city treasurer was given to Mr. Peebles by that officer, and demands were made for the payment of several installments, accompanied with the statement that unless they were paid they would be collected by process of law. These demands were made by the city attorney, in whose hands the claims had been placed for collection. The plaintiffs allege, and the court has found, that in consequence of these demands they paid several assessments protesting that they were not legally liable to pay the same and would seek to recover back the money. The court also finds that the plaintiff believed the assessment to be illegal and void at the time the installments were paid, and further, that the city solicitor assented to the proposition that if there was no legal liability to pay the assessment the money could be recovered back from the city.

In such circumstances can the plaintiffs recover? We think not. The reason is that the payments were not compulsory. They were not made under any duress of person or goods, or under any impending danger of seizure or sale of property. No warrant or other process had been issued directing a levy upon any property, nor had any right been acquired to issue such process. Before such a right could possibly be obtained the plaintiffs were entitled to a day in court, to be heard in opposition to the claim, to have the adjudication of the regularly constituted courts of the commonwealth, including the court of last resort on writ of error. The plaintiffs believed, at the time the installments were paid, that the assessment was wholly void, and the Act of Assembly under which it was laid unjust and unconstitutional. There was therefore, no mistake either of fact or law, under the influence of which the money was paid. A payment in such circumstances is a voluntary payment and can not be recovered back and this has been many times held. The doctrine is fully set forth in Hospital *v.* Philadelphia County, 12 Harr. 229, one of the cases relied upon by the plaintiffs. On page 231, LOWRIE, J., said: " A voluntary payment of money under a claim of right cannot in general be recovered back; but

[Peebles v. City of Pittsburgh.]

it has been held that when a party is compelled by duress of his person or goods to pay money for which he is not liable it is not voluntary but compulsory; and he may rescue himself from such duress by payment of the money, and afterwards on proof of the fact recover it back: Astley v. Reynolds, 2 Str. 916; 12 Pick. 13. But the threat of a distress for rent is not such duress because the party may replevy the goods distrained, and try the question of liability at law: Knibbs v. Hall, 1 Esp. Rep. 84. The threat of legal process is not such duress, for the party may plead and make proof, and show that he is not liable: Brown v. McKinally, 1 Esp. 279. But the warrant to a collector under a statute for the collection of taxes, is in the nature of an execution running against the person and property of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability. Where, therefore, a party not liable to taxation is called on peremptorily to pay upon such a warrant, and he can save himself in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and maintain an action to recover it back: 17 Mass. 461; 12 Pick. 13." The foregoing extract expresses the whole law applicable to this case. Where there is compulsion actual, present, potential in inducing that payment by force of process available for instant seizure of person or property, and the demand is really illegal, then the party by giving notice of the illegality and of his involuntary payment can recover back the money so paid in an action brought for that purpose. Where the payment is voluntary, as in this case, a protest with notice of an intent to reclaim, is not sufficient to sustain a recovery. The voluntary character of the payment still remains, notwithstanding the notice, and is fatal to the action. The element of coercion is essential to the right. Thus, in Dillon on Municipal Corporations, section 940, one of the requisites to the right of recovery is thus described: "The payment by the plaintiff must have been made upon compulsion to prevent the immediate seizure of his goods or the arrest of the person, and not voluntarily. Unless these conditions concur, paying under protest will not give a right of recovery." In the case of Taylor v. The Board of Health, 7 Cas. 73, it was said in the opinion of this court, on p. 75, " We state the case as one of a voluntary payment of taxes because there is no pretence that the defendant's officers did any more than demand the tax under a supposed authority of the law, and this is no more a compulsion than when an individual demands a supposed right. The threat that is supposed to underlie such demands is a legally harmless one; that in case of refusal, the appropriate legal remedies will be resorted to." Neither this

case nor the case of Borough of Allentown *v.* Saeger, 8 Har. 421, decides that a mere protest and notice where the payment is voluntary will confer a right of recovery. In the latter case the money was paid to an ordinary tax collector, who, it must be supposed, was armed with a warrant in the usual manner. In McCrickart *v.* City of Pittsburgh, 7 Norr. 133, the question was not raised. The payment was purely voluntary and the decision was put upon that ground. We have not been referred to any case and we know of none in which upon the question being directly raised, it has been held, that where the payment was entirely voluntary, a right to recover back the money paid, was created by a protest and notice of an intent to reclaim.

On the contrary it has been frequently, and by different courts, decided that such a notice and protest are not sufficient to give a right of reclamation where the payment was voluntary, the point being directly under consideration. The following are some of the cases: Commissioners *v.* Walker, 8 Kans. 431; Railroad *v.* Commissioner, 98 U. S. Rep. 541, per WAITE, C. J.; Forbes *v.* Appleton, 5 Cush. 115; Patterson *v.* Cox, 25 Ind. 261. In Shane *v.* City of St. Paul, 10 Reporter 368, the court say: "The payment therefore was a voluntary one unless the protest, which accompanied it, gave it a different character. This it could not do. If in fact the party was under no duress, restraint or compulsion, when he made it, it cannot be said that he acted under the influence of any coercion in making it, because he accompanied the act with a written or verbal protest. A protest is of no avail except in the case of payment made under duress or coercion, and then only as evidence tending to show that the alleged payment was the result of duress: McMillan *v.* Richards, 9 Cal. 417." In the case of Railroad *v.* Commissioners, supra, Chief Justice WAITE, after stating the rule substantially as above, added, on p. 544: "This, as we understand it, is a correct statement of the rule of the common law. There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary; but on examination it will be found that the protest was used to give effect to the other attending circumstances." This observation is applicable to many of the cases cited by the learned counsel for the plaintiffs. It is worthy of remark that in the case just referred to the claim paid was for taxes and the treasurer had in his hands at the time a warrant which would have authorized him to seize the goods of the company to enforce the collection, and the warrant was in the nature of an execution running against the property. When the company paid the tax claimed they filed with the treasurer a written protest alleging the illegality of the

[Kroeger *v.* Pitcairn.]

tax and giving notice that suit would be brought to recover back the money paid. Notwithstanding all this it was held that no recovery could be had because in fact no attempt had been made to put the warrant in force. The Chief Justice quotes with approbation the language of Chief Justice Shaw in Preston *v.* Boston, 12 Pick. 14, stating the rule thus: "When therefore a party not liable to taxation is called upon peremptorily to pay upon such a warrant and he can save himself in no other way than by paying the illegal demand he may give notice that he so pays it by duress and not voluntarily, and by showing that he is not liable to pay, recover it back," and he adds: "This we think is the true rule." Many more cases to the same effect might be cited, but it is unnecessary to prolong the discussion as the principle involved is free of difficulty.

Judgment affirmed.