# Easton Power Company *v.* Sterlingworth Railway Supply Company, Appellant.

*Evidence—Parol evidence—Written instrument—Understanding of parties—Declaration.*

Parol evidence of the understanding of the parties in respect to the construction of a written instrument may be given to explain that which would otherwise be ambiguous; and for this purpose evidence of declarations of a party made previous to or at the time of signing of the contract or of the circumstances surrounding its execution is admissible.

*Practice, C. P.—Rule of court—Pleading—Admissions—Act of May 25, 1887, P. L. 271.*

A rule of court which provides that whatever is averred in the statement, and not specifically denied in the answer, and whatever of new matter is stated in the answer and not specifically denied in the replication shall be taken as admitted at the trial, does not violate the procedure Act of May 25, 1887, P. L. 271.

*Set-off—Evidence—Voluntary payment.*

In an action by a power company against a manufacturing company to recover for electric power furnished, an alleged previous overpayment cannot be set off, where the evidence shows that such payment had not only been voluntarily made, but made after tests which seemed to satisfy the president of the defendant company, or were at least made for the purpose of satisfying him that his company had actually received the amount of power for which the plaintiff company had charged.

Argued Dec. 2, 1902. Appeal, No. 20, Oct. T., 1902, by plaintiff, from judgment of C. P. Northampton Co., April T., 1902, No. 40, on verdict for plaintiff in case of Eastern Power Company of Pennsylvania v. Sterlingworth Railway Company. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit for electric power sold and delivered. Before SCHUYLER, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court admitted in evidence various declarations and statements of the parties made prior to the execution of the contract. This testimony was admitted on the theory that the contract was partly in writing and partly in parol. [1–7] As to this evidence the court at the conclusion of the trial, and

apparently after the jury had retired, made the following ex-
planation:

[At the outset of the trial objection was made to the com-
petency of some testimony offered for the purpose of proving
that this contract was partly in writing and partly in parol.   I
overruled this objection and admitted evidence to be given of
a parol contract contemporaneous with the contract in writing,
without giving any reasons why I did so.   The objection made
to the introduction of the testimony was that there was no
allegation that the written contract was made by fraud, acci-
dent or mistake, and that, therefore, it was not competent to
introduce any evidence to alter or vary the contract in the ab-
sence of proof of that kind.   I stated at the time, although it
was not put on the record, that whilst I recognized the force of
the rule invoked by counsel for the defendant, that I did not
think that it had an application in the present case, for the
reason that after a careful examination of the pleadings I had
reached the conclusion that it was admitted by the pleadings
that this contract was partly in writing and partly in parol, and
that being partly in writing and partly in parol that the rule
invoked had no application.] [12]

[I wish to put myself upon record as giving the reasons why
I consider that the pleadings admit the fact that the contract
was partly in writing and partly in parol, and I find it is nec-
essary and proper for me to do that, for this reason, that the
allegation in the statement that the contract was partly in
writing and partly in parol is denied in the answer, but with a
qualification; and, therefore, without giving some reasons it
would leave the impression that the question as to whether the
contract was in writing or in parol was an open question.   Let
me read the first paragraph in the statement: " First, on De-
cember 28, 1898, a contract between the plaintiff and defend-
ant was entered into for the furnishing electric current by the
former to the latter."   The answer to that allegation is denied.
If that denial stood alone it probably would meet with the re-
quirements of our court rules on the subject; but you follow
that same language that is introduced by the formula in this
answer, which I deem an exceedingly bad one : "On the con-
trary two independent contracts were made December 28, 1898,
one in parol for electric lighting and one in writing for electric

power." Now, you deny that there was a contract for electric power. In the same paragraph in which you deny it you admit it. You admit there were two contracts, one for electric power and one for electric lighting by parol. That is in the same paragraph you deny that there was any contract for electric power or a separate contract for electric power, and admit there was a contract for electric power. I infer from that that you attach some unexplained meaning to the word deny—that when you say deny you don't mean deny, because here is an inconsistency.] [13]

The court charged in part as follows:

[It is alleged in the plaintiff's statement that that contract was partly in writing and partly in parol, that is, that it was partly written and it was partly entered into by word of mouth. Under our rule of court, unless that allegation is specifically denied in the answer to the statement, it is to be taken as admitted, and I now say to you, after examining the answer in its entirety, that that allegation is not specifically denied by the defendant, and, therefore, it is to be treated as admitted, and I instruct you that this contract with reference to furnishing electric power was partly in writing and partly in parol. So far as the written part of the contract is concerned it provides that the power to be furnished should be furnished as required ; and, by implication, it would follow that it would be paid for in the quantity that was required by the defendant. But the allegation of the plaintiff is that that part of the contract was changed by word of mouth, as follows : the allegation in the statement is that that part of the contract was changed by parol, as follows : It was agreed that the plaintiff should supply two motors, and that after the motors were installed the plaintiff would furnish and the defendant would receive and pay for a current of seventy horse power.] [17]

[If you find that the contract was not changed by parol you will very easily reach the conclusion that these credits would overbalance the claim of the plaintiff, and the defendant contends that that being so he is entitled to a certificate in his favor for the difference. I say to you as a matter of law that the defendant will not be entitled to any certificate under the circumstances in this case. If you find that the plaintiff has

been paid in full, or if you find that the plaintiff has been very much overpaid, in either event your verdict will be a verdict in favor of the defendant generally, not in favor of the defendant for any sum whatever.] [18]

Verdict and judgment for plaintiff for $622.59. Defendant appealed.

*Errors assigned* among others were (1–7) rulings on evidence, quoting the bill of exceptions; (12, 13) above explanations, quoting them; (17, 18) above instructions, quoting them.

*F. W. Edgar*, for appellant.—The court below was not justified upon any theory whatever in permitting the plaintiff to offer parol evidence to contradict the terms of the written contract: Coughenour v. Suhre, 71 Pa. 462; Weisenberger v. Harmony Fire, etc., Ins. Co., 56 Pa. 442; Dixon-Woods Co. v. Phillips Glass Co., 169 Pa. 167; Dickson v. Hartman Mfg. Co., 179 Pa. 343; Martin v. Berens, 67 Pa. 459.

The Northampton county court rules treat the defendant's "answer" as a formal pleading that will conclude the defendant at the trial, and will operate as a special plea restricting the scope of the general issue contrary to the regulation of the procedure act: Boomer v. Henry, 2 Pa. Dist. Rep. 357; Murdock v. Martin, 132 Pa. 86; Winkleblake v. Van Dyke, 161 Pa. 5; Taylor v. Beatty, 202 Pa. 120; Flegal v. Hoover, 156 Pa. 276; Easton Power Co. v. Sterlingworth Ry. Supply Co., 7 North. 366.

The defendant had a right, under the terms of the written contract, to rely upon the good faith of the plaintiff that it would accurately measure the current and charge only for the amount of horse power actually supplied. And as soon, then, as the defendant discovered that it had been overcharged, the defendant had a right to recover by way of rebate or recoupment the excess paid: Guffey v. Clever, 146 Pa. 548; Heastings v. McGee, 66 Pa. 384; Worley v. Moore, 97 Ind. 15; Hanson v. Jones, 20 Mo. App. 595.

*E. J. Fox*, with him *J. W. Fox*, for appellee.—When matters of facts, depending on oral testimony, are connected with and necessary to a proper understanding of the written evi-

dence, the court is not bound to construe the latter as though it stood alone. An admixture of oral and oral and written evidence draws the whole to the jury: Wetherill Bros. v. Erwin & Wagener Co., 12 Pa. Superior Ct. 259; Rearich v. Swinehart, 11 Pa. 233.

Where there is a dispute as to a conversation which took place prior to the written contract, and the evidence of the plaintiff contradicts that of the defendant, the question as to what was the real contract is for the jury: Anderson v. National Surety Co., 196 Pa. 288; Selig v. Rehfuss, 195 Pa. 200; Steel v. Loeb, 5 Pa. Superior Ct. 238; Ferguson v. Rafferty, 128 Pa. 337; Sutch's Estate, 201 Pa. 305; American Harrow Co. v. Swoope, 16 Pa. Superior Ct. 451; Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 165; McCormick Harvesting, etc., Co. v. Nicholson, 17 Pa. Superior Ct. 188; Russell v. Pittsburg, etc., Railway Co., 17 Pa. Superior Ct. 195.

When a man demands money of another, as a matter of right, and he pays it with the full knowledge of the fact on which payment is founded, he can never recover back the sum he has so voluntarily paid: Union Ins. Co. v. Allegheny, 101 Pa. 250; De La Cuesta v. Ins. Co. of N. A., 136 Pa. 62; Peebles v. Pittsburg, 101 Pa. 304.

OPINION BY BEAVER, J., April 20, 1903:

In and by a written agreement between the plaintiff and defendant, in which the former is called "the company" and the latter "the consumer," it was agreed: "1. That the company shall furnish to the consumer electric current for operating 70 H. P. by motors at a net price not to exceed the present cost per indicated H. P. of your steam engine and in no case to exceed $4.70 per H. P. per month, on your premises in the city of Easton, Pa., for one year from          ." At the end of the tenth paragraph there is inserted in writing: "It being understood that this power shall be delivered to the party of the second part as they require it." Most of the alleged errors complained of find their spring in this latter paragraph.

1. It is alleged by the plaintiff that "as they require it" referred to the erection of two several motors at different times, the one a forty horse power motor, which was to be installed

early in April, and the other a thirty horse power motor, to be installed later, and that the phrase refers to what was required to run these several motors as they were installed and that, inasmuch as seventy horse power could not be furnished through a forty horse power motor, they were to pay for the amount which could be furnished through the forty horse power motor until the second one, making the maximum amount to be supplied, could be erected and installed.

The defendant, on the other hand, contends that the phrase referred to the amount required to do the work of their establishment, the amount varying at different times according to the draft made upon the power.

The language of the paragraph will apply with equal propriety, it seems to us, to either of these contentions. Under such circumstances, the rule relating to the introduction of parol testimony is well stated in 6 P. & L. Dig. of Dec. 10,214: " Parol evidence of the understanding of the parties in respect to the construction of a written instrument may be given to explain that which would otherwise be ambiguous and for this purpose evidence of declarations of a party made previous to or at the time of the signing of the contract or of the circumstances surrounding its execution is admissible." This view of the case fairly disposes of all the assignments of error which relate to the admission of evidence and the charge of the court concerning the interpretation of the clause in the written agreement as to which there was such wide divergence of views by the parties thereto.

2. Under the rules of court of Northampton county, whatever is averred in the statement and not specifically denied in the answer and whatever of new matter is stated in the answer and not specifically denied in the replication shall be taken as admitted at the trial. These rules which we have carefully examined and similar ones which have been successfully in use in other portions of the state for many years are not only not in violation of the provisions of our procedure act of May 25, 1887, P. L. 271, but are in direct accord with its spirit and tenor and especially helpful in carrying out the prime object of its enactment. The object of the act and of all good pleading is to reach a direct and specific issue as speedily as possible. By those rules all irrelevant matter and all admitted facts are

eliminated and the parties come directly to the disputed facts, alleged on the one part and denied on the other, which consti- tute the issue and to which their proofs are to be addressed. In this view, we see nothing erroneous in what is complained of in the several assignments of error relating to the pleadings and the several questions arising therefrom. Although the court had stricken from the record all of the pleadings originally filed, on account of their verbosity, there was nothing erroneous in admitting them in evidence as declarations of the parties and they had the same weight as, and no greater than, any other declarations of the defendant as to what it admitted and what it denied in the plaintiff's statement. In addition to this, the reasons given at the end of the trial for overruling objections of defendant to the admission of testimony were entirely gra- tuitous and can hardly be considered a part of the record of the trial. The remarks embodying them seem to have been made, as alleged by the appellee, after the jury had retired. There is no exception to them and no bill sealed and, even if the reasons given for the previous rejection of testimony were not sound, we are satisfied that the testimony itself was properly admitted and, therefore, there would be no reversible error therein.

3. As to the question of set-off. The defendant attempted to recover, under the plea of set-off, a payment which had been made to the plaintiff under circumstances which are fairly out- lined in the plaintiff's offer, and which, for the sake of brevity, are stated therefrom rather than from the testimony which in effect sustains it: " The plaintiff proposes to prove by the wit- ness that he was present at tests which were made and that, from the knowledge acquired during the observations of those tests, he is able to say what amount of power was required to operate the machinery then employed by the Sterlingworth company. That, after the conclusion of the tests, he had a conversation with Mr. Coolbaugh (the president of defendant company), in which Mr. Coolbaugh directed that a check should be sent to the power company for $1,061.70, and that he also said to the witness, 'Now this matter is all settled, Mr. Fletcher, we have never had seventy horse power. I don't blame you nor your company that you made a good trade. We ought to have had that power measured. We don't dispute your statement that the power was there, if we required it.' That the witness

then, in Mr. Coolbaugh's presence, made a calculation and submitted the same to him, indicating that they were actually using at that time approximately seventy horse power, this conversation having taken place in October, 1899. This proof to be followed by proof of the fact that no claim was made on behalf of the Sterlingworth Company that they were permitted to take any less than seventy horse power until January 11, 1900." The testimony adduced under this offer, so far as the payment was concerned, was not denied by Mr. Coolbaugh, who was called as a witness by the defendant. It would seem, therefore, that the money had not only been voluntarily paid but paid after tests which seemed to satisfy Mr. Coolbaugh or were at least made for the purpose of satisfying him that his company had actually received the amount of power for which the plaintiff company had charged. It is hardly necessary to quote authorities for the proposition that money paid under such circumstances cannot be recovered back. The cases are very numerous: Christ Church Hospital v. Phila. Co., 24 Pa. 229; Lehigh Coal & Navigation Co. v. Brown, 100 Pa. 338; Peebles v. Pittsburg, 101 Pa. 304; De La Cuesta v. Ins. Co. of N. Am., 136 Pa. 62; Schoenfeld v. Bradford, 16 Pa. Superior Ct. 165. In view of these and many later cases, it is clear that the action of the court, in refusing to affirm the defendant's point in relation to the recovery of the money paid under the plea of set-off and in affirming the plaintiff's points in regard thereto, was correct.

This fairly disposes of the various questions raised by the twenty-five assignments of error and, finding nothing in any of them under which the court can be convicted of error, they are all overruled. Judgment affirmed.