## Tesauro v. Chestnut Corporation

*Markovitz, Stern & Shusterman,* for plaintiff.
*Bank & Minehart,* for defendant.

PIEKARSKI, J., May 12, 1959.—On March 5, 1959, we discharged defendant's rule to open judgment entered for failure to file an answer to plaintiff's complaint in assumpsit.

Defendant is a Pennsylvania corporation with its registered offce at 1411 Walnut Street, Philadelphia. It was owner of premises 801-809 Chestnut Street, Philadelphia, upon which plaintiff was engaged to do work and supply materials for payment of which the original action was instituted on June 6, 1958.

Service on defendant could not be had; service was made on the Secretary of the Commonwealth by registered mail and upon defendant in a like manner, but as to the latter the return was "not known." One month thereafter judgment was entered. Attachment execution followed. Concurrently with garnishee's, Albert M. Greenfield & Company, answer to interrogatories, the petition to open was filed, and depositions taken.

From our refusal to open the judgment, defendant files appeal.

Since a petition to open a judgment by default is addressed to the court's sound discretion and is essentially an equitable proceeding ruled by equitable principles (Quaker City Chocolate and Confectionery Company v. Warnock Building Association, 347 Pa. 186) and its denial is reversible only upon demonstrated and clear abuse of discretion (Berkowitz v. Kass, 351 Pa. 263; Kogen v. Horowitz, 169 Pa. Superior Ct. 349), it becomes our responsibility to specify just why we denied the relief sought in defendant's petition to open.

Defendant's petition alleges that: (1) Plaintiff should have and could have advised defendant's agent, Albert M. Greenfield & Company, or defendant's counsel, Melvin Bank, Esq., of the institution of suit because both plaintiff and his attorney had on several occasions consulted with defendant's agent, and because plaintiff himself discussed the claim with defendant's attorney; (2) that plaintiff acted in bad faith in obtaining leave to serve the Secretary of the Commonwealth on his averment of inability to locate defendant; (3) that defendant has a good defense and a counterclaim against plaintiff; (4) that under paragraph 16 of the contract, arbitration is provided.

As to (1) we must conclude from the answer, and it is not validly set aside in depositions, that Albert M. Greenfield & Company no longer represented defendant in any capacity and could give no address save defend-

ant's registered office; as to plaintiff's conferences with defendant's counsel, that occasion was about a year before suit started; it was only on phone call from Albert M. Greenfield & Company's office, and plaintiff did not even remember the name of counsel.

The depositions present absolutely nothing to counteract plaintiff's lack of knowledge of the whereabouts of Mr. Krieger, a president of defendant corporation. Indeed Krieger's own depositions show that plaintiff and Krieger had met only in New York, either in a railroad station or a hotel lobby. True, plaintiff did have a telephone number for Krieger in New York but was unable ever to reach Krieger there.

A comparison of the relative obligations, if obligations be too strong a word, simple business practices will do, leads to a focus upon a complete imbalance, namely: The duty of a corporation to notify the Secretary of the Commonwealth of any change of address as against the nonexisting duty of a creditor to pursue his quest of the whereabouts of a debtor last known to have been in a railroad station or a hotel lobby in New York with only a fruitless telephone reference for location of an officer of the debtor corporation. Add to that the admitted fact that the premises upon which plaintiff was engaged to work and supply materials was owned by defendant corporation by an unrecorded deed, reconveyed by the same defendant owner, again by an unrecorded deed, and the picture of deliberate escape from vulnerability to service of process begins to unfold with the intent to avoid responsibility to account. Only when trapped by an attachment does defendant leave the security of its hiding to come into the open and to seek the exercise of equity's grace. We cannot find that defendant's conduct evokes its intervention. Nowhere is there any convincing testimony to excuse defendant's default.

Indeed, it is impossible for the hearing judge to conclude that the reason in (1) has any valid support. Contrast the evasion practiced upon plaintiff at page 19 of the depositions, to the effect that plaintiff sought defendant's president weekly on the day he was said to come to Philadelphia, that plaintiff sat for days awaiting his arrival at his erstwhile agent's office only to be told that defendant went to Israel,* with the contention that a letter was once sent to plaintiff, its receipt was denied, and was not returned and the admission of telephone calls from defendant's erstwhile agent long before suit was instituted plus all of defendant's testimony by depositions, and the conclusion is inescapable that there are no equities in favor of defendant to warrant our setting aside a service specifically validated by law and necessitated by defendant's planned avoidance of service of process.

Now add to this picture of evasion the transfer of assets, the change of corporate address to no corporate address, an apparent dissolution of the corporation without notification as provided by law, and there is a panorama from which no detail warranting equitable intervention arises.

And yet there are other features, all adverse to any inclination to extend the grace of equity's intercession on behalf of defendant: Defendant's tenant was given no notice of the landlord's (defendant's) change of address; no notice of an assignment of the lease; defendant paid no transfer tax on the conveyance; etc., etc.

A careful review of the petition, the answer and the depositions give us not even the slightest inference of an abuse of discretion in refusing to open this judgment. Neither the proposed answer nor the intended counterclaim affect our conclusion. Had defendant any

---

* Even Krieger's depositions do not confirm this trip.

confidence in the value of his unliquidated counter-claim, his avoidance of facing the issue for two years with the knowledge of plaintiff's unpaid claim completely belies it. None of the grounds alleged in the petition to open judgment find support or merit in the depositions or in defendant's conduct.

Patently obstructive tactics over a prolonged period of time fashioned only for evasive purposes do not convince this court that the counterclaim is not of the identical stature purposely intended to avoid a responsibility. This defendant has not come with clean hands seeking the grace of equitable intervention. Indeed, the depositions disclose that he also walks into this court with feet dirtied with the mire of deceptive evasion. Equitable remedies are not prescribed for such actors; judgments in default are.